## Wilson *against* Davis.

In a contract for the sale of a press, type and stock, the vendor agreed and undertook to procure for the vendee four hundred responsible subscribers for the paper to be issued from the press. *Held*, that these were not to be in addition to those on the subscription-list which passed as an accessory of the establishment; nor exclusive of such subscribers as the vendee might himself procure.

Upon a contract of sale reserving to the vendee the right to rescind within a given time and be relieved from the purchase money, after the time has elapsed the sale has become absolute, and the vendee liable for the purchase money : and it is error to submit to the jury whether the sale was rescinded by the parties after the time had elapsed, when there was no evidence of the fact.

ERROR to the Common Pleas of *Columbia* county.

This was an action on the case by John T. Davis against A. B. Wilson and others, founded upon the following agreement :

Memorandum of agreement made this 25th day of July 1840, between A. B. Wilson, C. B. Bowman, Daniel Driesbach, John Bowman, A. B. Shuman, Isaiah T. Beach, John Connor, Thomas M'Nair & Co., of the one part, and J. T. Davis of the other part, to wit, the said A. B. Wilson, C. B. Bowman, Daniel Driesbach, John Connor, Thomas M'Nair & Co., doth sell and convey unto the said John T. Davis, his heirs, executors, administrators or assigns, the printing establishment of the Berwick Conservator, including the press, type, cases, stands, fixtures and appurtenances thereunto belonging, for the consideration of $358.30½, well and truly paid by the said J. T. Davis, his heirs, executors, administrators or assigns, at the expiration of two years from the date of this agreement, with interest on the same from one year after the date of this agreement; but if, at the expiration of two years, the said Davis should be of opinion that the said establishment will not support itself, together with a reasonable compensation for the editorial charge, he may give up the same to the parties of the first part, and be discharged from the payment of the above consideration of $358.30½, and the interest thereon, as well as any rent or hire for the use of the same. The said J. T. Davis, of the one part, is to take or purchase the stock on hand, consisting of paper, ink, and other materials, necessary to the publication of the Conservator, of A. B. Wilson and others, of the other part, and to make payment for the same at the expiration of the usual credit. It is further understood by the parties that the said Davis shall collect the subscription now due on the Conservator, and pay over the same when collected, to A. B. Wilson, C. B. Bowman & Co.

The said parties of the first part also bind themselves to procure 400 responsible subscribers to the said paper, within one month

from the date hereof, who shall continue as subscribers for one year; and on failure to procure the said 400 subscribers, they bind themselves to become responsible for the deficiency. The said Davis shall take charge of said press, and forthwith commence the publication of a weekly newspaper in the borough of Berwick, devoted to the promotion of Whig principles. In witness whereof, the said parties bind themselves each unto the other, in the penal sum of $1000 for the true and faithful performance of the covenant aforesaid, as witness their hands and seals the day aforesaid.

It appeared in evidence that there were about 270 subscribers on the list when the establishment was delivered to the plaintiff; to which he procured a few to be added. It also appeared that after the two years had elapsed, to wit, on the 2d September 1842, the plaintiff gave a written notice to the defendants that he elected to rescind the contract. There was also some evidence that some of the defendants were negotiating or talking about a sale of the press after the two years had elapsed.

The plaintiff claimed to recover from the defendants the value of 400 subscribers, at two dollars per annum, which they agreed to furnish, and also to be released from liability to keep the press, types, &c. The defendants contended that the subscription-list containing the 270 names was to be estimated as part of the 400; and that after the lapse of two years the sale became absolute, and the defendants were entitled to an allowance in this action for the contract price of the press.

The court below instructed the jury that the 270 subscribers in the original list were, by the terms of the contract, to be estimated as part of the 400, and that the defendants were entitled to an allowance of $358.30½, the price of the press, &c. with one year's interest, unless the jury was satisfied, from the evidence, that the contract was rescinded by the consent of all the parties after the time stipulated. A verdict was rendered for the plaintiff for $603.76.

*Hurley* and *Cooper*, for plaintiffs in error, argued that the court erred in submitting to the jury the fact whether the parties had rescinded the contract, when there was no evidence of it at all.

*Comley*, contra.

The opinion of the Court was delivered by

GIBSON, C. J. — The agreement is to be construed with a view to the object intended to be effected by it, which was to secure to the plaintiff below a reasonable compensation for his services as a party printer. The defendants were the proprietors of a country newspaper on the eve of a political campaign; and they cast about for an editor to conduct it on his own risk and credit by giving his time, trouble, and the influence of his talents, to the

[Wilson v. Davis.]

cause in which they were engaged. It was supposed that 400 subscriptions would yield him an adequate compensation; for the plaintiff stipulated for no more. When the defendants, therefore, sold him the press, type and stock, they undertook to procure for him 400 *responsible* subscribers in the course of a month; but certainly these were not to be in addition to those on the subscription-list which passed as an accessory of the establishment. Giving to the undertaking a reasonable construction, and judging of it by its scope instead of particular expressions, it is a contract of guaranty by which the defendants engaged for a particular number of subscribers in all; and this, too, whether the plaintiff should be willing to accept all or any of those on the transferred list as a part of it. He had nothing to do with acceptance or choice. The defendants were bound for 400 responsible subscribers; and their solvency was their concern, not his. They were to be produced like the contingent of a German prince, and mustered into service without inspection. The defendants were bound for the requisite number of subscriptions, and they might have subscribed the whole number themselves. Nor were the 400 to be exclusive of those procured by the plaintiff himself. To have stipulated for a right to recruit on separate account, would have given to the agreement an appearance of trick like those stock-jobbing contracts to deliver a given number of shares at a day certain, in which the seller's performance has been forestalled by what is called cornering; in other words, buying up all the floating shares in the market. These contracts, like other stock-jobbing transactions in which the parties deal upon honour, are seldom subjected to the test of judicial experiment; but they would necessarily be declared fraudulent. Now in a county where the subscribers must be obtained from the political minority, a contract allowing the plaintiff to seek subscriptions for himself, would be open to the same abuse; and as no design to obtain an unfair advantage is imputed, we are bound to give the agreement an interpretation which will not put the plaintiff in the predicament of such a contractor. The meaning of the contract, as it was understood by the parties themselves, must therefore have been inconsistent with the interpretation put on it by the plaintiff's counsel; and the defendants are entitled to be credited with the actual number of responsible subscribers by whomsoever procured.

The jury were properly instructed that the sale became absolute by want of notice of its recision before the expiration of the appointed period; but there was error in leaving them to determine whether the defendants had agreed to rescind the contract subsequently, when there was not a spark of evidence to raise the question. It was shown that the plaintiff had given notice of his determination to rescind after the day, and it is testified that two of the defendants had entertained an offer to purchase, as if the establishment were still the property of the defendants; but it was

[Wilson v. Davis.]

not pretended that the others had been consulted, and the direction, predicated, as it may have been, of this part of the evidence, had a tendency to mislead.

Judgment reversed, and a *venire de novo* awarded.